**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| DES L. MANN, <br><br> Plaintiff, <br><br> vs. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br> Defendant. | No. C14-2021-LTS <br><br> **MEMORANDUM OPINION AND ORDER** |

Plaintiff Des L. Mann seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for Social Security Disability benefits (DIB) and Supplemental Security Income benefits (SSI) under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Mann contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she was not disabled during the relevant period. For the reasons that follow, the Commissioner's decision will be reversed and remanded.

## I. BACKGROUND

Mann was born in 1966 and has past work as a nurse and pizza maker. AR 23, 329. She filed applications for DIB and SSI on December 28, 2011, alleging a disability onset date of January 1, 2010. AR 13, 188, 190. She contends that she is disabled due to migraine headaches, as exacerbated by certain mental health issues. Doc. No. 13 at 3. Mann's claim was denied initially and on reconsideration. AR 113, 120, 129. She then requested a hearing before an Administrative Law Judge (ALJ) and ALJ Julie K. Bruntz conducted a hearing on November 5, 2013. AR 13, 31. The ALJ issued a

decision on November 20, 2013, in which she denied Mann's claim. AR 13-25. Mann sought review by the Appeals Council, which denied review on March 7, 2014. AR 1-3. Thus, the ALJ's decision stands as the final decision of the Commissioner. AR 1.

On May 2, 2014, Mann filed a complaint (Doc. No. 3) in this court seeking review of the Commissioner's decision. On June 18, 2014, with the parties' consent (Doc. No. 6), the Honorable Linda R. Reade reassigned the case to Chief Magistrate Judge Jon S. Scoles for final disposition and entry of judgment. The case was reassigned to me on January 12, 2015. The parties have fully briefed the issues and the matter is now fully submitted.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet

3

the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, even though the burden of

production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III.  THE ALJ'S FINDINGS

The ALJ made the following findings:

(1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

(2) The claimant has not engaged in substantial gainful activity since January 1, 2010, the alleged onset date (20 CFR 404.1571 *et. seq.*, and 416.971 *et seq.*).

(3) The claimant has the following severe impairments: depression; obesity; migraines; history of asthma (20 CFR 404.1520(c) and 416.920(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally lift and carry 20 pounds and 10 pounds frequently. She can stand and walk and sit each 6 hours of an 8-hour workday. Her ability to push and pull including hand and foot controls is unlimited. She can occasionally climb ramps and stairs, ladders, ropes, and scaffolds; balance, stoop, kneel, crouch, and crawl. She would need to avoid concentrated exposure to humidity, fumes, odors, gases, poor ventilation, and dust. She is limited to simple, routine tasks.

(6) The claimant is unable to perform any past relevant work as set out in Exhibit 20E as based on the

        testimony of the vocational expert (20 CFR 404.1565 and 416.965).

(7) The claimant was born on February 14, 1966 and was 43 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. (20 CFR 404.1563 and 416.963)

(8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 415.969 and 416.969(a)).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g) ).

AR 15-24.

## IV. *THE SUBSTANTIAL EVIDENCE STANDARD*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit

6

explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v.*

*Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Mann raises four issues:

1. The ALJ Erred In Requiring Unspecified "Objective" Evidence Of Migraine Headaches; There Are No Diagnostic Or Laboratory Tests That Can Confirm The Presence Of Migraines And The ALJ Failed To Appreciate The Objective Evidence Present.

2. The ALJ Must Determine Whether A Claimant's Condition Meets Or Equals The Listings Of Impairment; Mann's Migraine Headaches Are Medically Equivalent To The Most Closely Analogous Listing Of Impairment, Listing 11.03, Non-Convulsive Epilepsy, And The ALJ Erred In Failing To Address This Issue.

3. The ALJ's Decision Is Not Supported By Substantial Medical Evidence As The ALJ Failed To Fully And Fairly Develop The Record By Obtaining Work-Related Limitations From A Treating Or Examining Source.

4. The ALJ Must Make An Individualized Function-By-Function Assessment Of A Claimant's Residual Functional Capacity; As The ALJ Failed To Include Mann's Need For Frequent Absences Due To Migraine Headaches, The ALJ Failed To Make An Individualized Function-By-Function Assessment Of Mann's Residual Functional Capacity.

Doc. No. 13 at 11-26. I will address each issue separately.

### A. *Objective Evidence of Migraines*

Mann notes that migraine headaches are her primary impairment and argues that the ALJ erroneously relied on a lack of "objective evidence" in denying her claim of disability. As the Commissioner notes, however, Mann does not explain why she believes the ALJ imposed an "objective evidence" requirement or relied on the lack of

8

objective evidence to deny her claim. Mann simply cites the ALJ's lengthy summary of the medical evidence and states: "The ALJ then concluded that the objective medical evidence was consistent with the ALJ's residual functional capacity assessment (TR 23)." Doc. No. 13 at 14. The ALJ actually wrote as follows:

> In conclusion, the record considered as a whole supports some limitations in the claimant's ability to perform work-related activities. However, those limitations are adequately accommodated by the residual functional capacity (RFC) outlined above, which is consistent with objective medical findings <u>and opinion evidence of record, as well as the documented activities</u>. The record does not support greater limitations.

AR 23 [emphasis added]. Having carefully reviewed the ALJ's ruling, I find Mann's argument that the ALJ imposed an "objective evidence" requirement to be flat-out wrong. The ALJ imposed no such requirement but, instead, simply concluded that her RFC determination was consistent with (a) the objective medical findings, (b) the opinion evidence of record and (c) evidence of Mann's activities. I reject Mann's first argument for reversal.

### B. *Failure to Address Listing 11.03*

At Step Three, the ALJ found that Mann does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. AR 16. The ALJ specifically addressed Listing 12.04 (affective disorders) and found that Mann's impairment did not meet or medically equal either the "paragraph B" or "paragraph C" criteria for that listing. AR 16-17. Mann does not challenge this finding and, indeed, acknowledges that migraine headaches are not a listed impairment. However, she contends the ALJ erred in failing to address Listing 11.03 (non-convulsive epilepsy) and argues the record demonstrates that her impairment medically equals that listing.

9

### 1. *Applicable Standards*

The Supreme Court has explained the listings as follows:

> The listings . . . are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. . . .
>
> For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment. . . . A claimant cannot qualify for benefits under the "equivalence" step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment.

*Sullivan v. Zebley*, 493 U.S. 521, 529-32 (1990) [citations and footnotes omitted]. The purpose of the listings is to streamline the decision process by identifying claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational backgrounds. *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). Thus, if an impairment meets or equals one of the listings, the claimant is considered disabled regardless of age, education, and work experience. *Kelley,* 133 F.3d at 588.

The claimant has the burden of proving that his or her impairment meets or equals a listing. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). Remand is not required when an ALJ fails to explain why an impairment does not meet or equal a listed impairment "as long as the overall conclusion is supported by the record." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011).

*2. Analysis*

Listing 11.03, which is part of the "Neurological" category of impairments, reads as follows:

> 11.03 Epilepsy—nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.03. Mann notes that the Commissioner's Program Operations Manual System (POMS) identifies Listing 11.03 as being closely analogous to chronic migraine headaches. Doc. No. 13 at 16-17 (citing POMS DI 24505.015). The example Mann references states as follows:

> A claimant has chronic migraine headaches for which she sees her treating doctor on a regular basis. Her symptoms include aura, alteration of awareness, and intense headache with throbbing and severe pain. She has nausea and photophobia and must lie down in a dark and quiet room for relief. Her headaches last anywhere from 4 to 72 hours and occur at least 2 times or more weekly. Due to all of her symptoms, she has difficulty performing her ADLs. The claimant takes medication as her doctor prescribes. The findings of the claimant's impairment are very similar to those of 11.03, Epilepsy, non-convulsive. Therefore, 11.03 is the most closely analogous listed impairment. Her findings are at least of equal medical significance as those of the most closely analogous listed impairment. Therefore, the claimant's impairment medically equals listing 11.03.

POMS DI 24505.015(B)(7)(b). Mann argues that her situation is similar and that remand is required with directions that the ALJ consider Listing 11.03.

The Commissioner disagrees. She points out that Mann failed to raise Listing 11.03 during the administrative proceedings and argues, in any event, that the evidence fails to demonstrate that Mann's impairment medically equals that listing. As for the first point, I reject the Commissioner's apparent contention that Mann is at fault for the ALJ's

11

failure to consider Listing 11.03.[1] The Commissioner cites no authority for the proposition that a claimant must tell the ALJ which listings to consider. Presumably, identifying relevant listings is within the scope of a Social Security ALJ's unique training and experience. Requiring a claimant to specify the relevant listings – at risk of waiving the right to rely on them – would be inconsistent with the well-accepted notion that Social Security proceedings are non-adversarial in nature. *See, e.g., Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994).

Moreover, the possibility that Listing 11.03 might be relevant to a claim involving migraine headaches should not have come as a surprise to the ALJ. As noted above, the Commissioner's own manual – POMS – identifies that listing as the "most closely analogous" listing for a claimant who has "chronic migraine headaches." POMS DI 24505.015(B)(7)(b). Many federal courts, including this court and others in the Eighth Circuit, have discussed Listing 11.03 in connection with migraine headaches. *See, e.g., Yeatman v. Colvin*, No. 4:14–CV00255–JJV, 2014 WL 7330627, at *2 (E.D. Ark. Dec. 18, 2014) (remanding with directions to address Listing 11.03); *Savage v. Colvin*, 41 F. Supp. 3d 763, 771 (S.D. Iowa 2014) (noting the claimant's argument that Listing 11.03 applied before reversing the ALJ's decision on other grounds); *Theis v. Astrue,* No. 3:10CV00193 JLH, 2011 WL 2601581, at *6 (E.D. Ark. July 1, 2011) (directing ALJ to consider Listing 11.03 on remand); *Gettner v. Barnhart,* No. C05-4096-MWB, 2006 WL 1192868, at *13 (N.D. Iowa May 2, 2006) (noting that the ALJ expressly addressed Listing 11.03 in connection with various impairments that included migraines).

---

[1] The Commissioner states:
> In fact, plaintiff did not raise the issue of Listing 11.03 at the hearing or even in her brief to the Appeals Council. AR 31-58, 335.

Doc. No. 14 at 12.

Despite POMS, and the case law referenced above, neither the ALJ nor the state agency consultants who reviewed Mann's records made any reference to Listing 11.03. AR 16-17, 74-80. While Mann certainly could have brought that listing to the ALJ's attention, I find that the ALJ likewise could have – and *should* have – considered the listing without being asked to do so.

The real issue is: What is the remedy? If it is obvious that the evidence of record cannot possibly support a finding that Mann's impairment meets or equals Listing 11.03, then the ALJ's error would be harmless and remand would not be necessary. *See, e.g., Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008) (error is harmless if there is no indication that the ALJ would have decided the claim differently). That is not the case here. Having carefully reviewed the record, I find that there is sufficient evidence of chronic, severe migraine headaches during the relevant period of time that the ALJ must consider whether that impairment medically equals Listing 11.03.

For example, Mann visited the Emergency Room on May 29, 2010, due to a migraine headache that had lasted four days. AR 381. She received Phenergan, Toradol and Vistaril intravenously. AR 382. She was back in the ER on July 6, 2010, with a migraine that had started the morning before. AR 383. She received an injection of Toradol, Phenergan and Nubain. AR 383-84.

Mann saw Mary Pat Rosman, D.O., on July 9, 2010, to discuss her frequent migraine headaches and was referred for a neurological evaluation. AR 352. On August 9, 2010, Mann told Dr. Rosman that she continued to have "recurrent severe headaches." AR 351. On August 17, 2010, Mann returned to Dr. Rosman due to a migraine headache that had started the night before. AR 350. Dr. Rosman administered an injection of Toradol, Nubain and Phenergan. *Id.*

On September 1, 2010, Mann reported that the frequency and severity of her migraine headaches had increased and that she was having migraines daily. AR 349. She told Dr. Rosman that she "wakes up with headaches." *Id.* On September 15, 2010, Dr. Rosman saw Mann again and noted that she had been in the ER with a migraine on

September 9 and that the migraine had not resolved despite the administration Nubain, Phenergan and Toradol. AR 348. During the September 15 visit, Dr. Rosman administered injections of Norflex, Toradol and Nubain. *Id.* Mann visited the ER due to migraines on January 6, March 25, November 19 and December 12 of 2011, along with March 3 and June 9 of 2012. AR 387, 389, 392, 394, 396, 398, 404, 406. At times, the migraine lasted for several days before Mann went to the ER. *See, e.g.,* AR 398.

On February 4, 2013, William Talman, M.D., a neurologist, found that Mann "has two type [sic] of headaches, a milder daily headache that seems not to interfere with her ADL's and a much more severe headache that is preceded by scintillating scotomata and accompanied by nausea and photophobia." AR 547. Mann was prescribed Depakote (valproic acid) and Compazine and was directed to withhold all other migraine medication. AR 546-47.

On March 8, 2013, Mann reported that Depakote was not helping. AR 588. She was advised that she is "a life long headache person" and that it was necessary to "give each medication a fair shot." AR 588-89. On March 26, 2013, Atif Zafar, M.D., noted that Mann had tried a variety of other medications, including Propranolol, TCAs, Topamax, Neurontin, Lamictal and "pretty much all opioids." AR 589. On April 10, 2013, Mann reported that her headaches continued to require emergency room visits, with the most-recent being two days earlier. AR 590.

Based on this medical evidence, Mann was entitled to have the ALJ conduct an analysis under Listing 11.03. If the ALJ had conducted such an analysis, her conclusion would be upheld so long as it fell within the "available zone of choice." *See, e.g., Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008). Unfortunately, the ALJ did not consider Listing 11.03, meaning there was no "choice" and, therefore, no "zone." I find that remand is necessary with directions that the ALJ consider whether Mann's migraine headaches meet or equal Listing 11.03.

*C.    Development of the Record*

Mann next contends that the ALJ failed to properly develop the record by obtaining an opinion about work-related limitations from a treating or examining source. The Commissioner acknowledges that the record contains no such opinion but argues that it was unnecessary because the ALJ had sufficient evidence to determine Mann's RFC.

*1.    Applicable Standards*

The ALJ has a duty to fully and fairly develop the record, even when the claimant is represented by counsel. *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir.2000) (citing *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir.1983)). This duty includes "arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [his or her] own medical sources." 20 C.F.R. § 416.945(a)(3). "Because the social security disability hearing is non-adversarial … the ALJ's duty to develop the record exists independent of the claimant's burden in the case." *Stormo*, 377 F.3d at 806 (citing *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir.2004)).

Where, as here, the ALJ finds that a claimant is unable to perform any past relevant work, the burden shifts to the Commissioner to show that there is other work that the claimant can do, given the claimant's RFC and his or her age, education, and work experience. *Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). As a general rule, the Commissioner cannot make such a showing without opinion evidence from a treating or examining source. *Nevland,* 204 F.3d at 857. In *Nevland*, the Eighth Circuit Court of Appeals stated:

> In the case at bar, there is no *medical* evidence about how Nevland's impairments affect his ability to function now. The ALJ relied on the opinions of non-treating, non-examining physicians who reviewed the reports of the treating physicians to form an opinion of Nevland's RFC. In our opinion, this does not satisfy the ALJ's duty to fully and fairly develop the record. The opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole. *Jenkins v. Apfel,* 196 F.3d 922, 925 (8th Cir.1999). Likewise, the

15

> testimony of a vocational expert who responds to a hypothetical based on such evidence is not substantial evidence upon which to base a denial of benefits. *Id*. In our opinion, the ALJ should have sought such an opinion from Nevland's treating physicians or, in the alternative, ordered consultative examinations, including psychiatric and/or psychological evaluations to assess Nevland's mental and physical residual functional capacity. As this Court said in *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir.1975): "An administrative law judge may not draw upon his own inferences from medical reports. *See Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir. 1974); *Willem v. Richardson*, 490 F.2d 1247, 1248–49 n. 3 (8th Cir. 1974)."

*Id.* [emphasis in original]. However, *Nevland* "does not compel remand in every case in which the administrative record lacks a treating doctor's opinion." *Hattig v. Colvin*, No. C12-4092 MWB, 2013 WL 6511866, at *10 (N.D. Iowa Dec. 12. 2013). Even without an opinion from a treating or examining source, the ALJ's decision may be affirmed if there is other medical evidence demonstrating the claimant's ability to function in the workplace. *Id.*; *see also Agan v. Astrue*, 922 F. Supp. 2d 730, 756 (N.D. Iowa 2013). The question is whether there is sufficient evidence of "how [the claimant's] impairments … affect [her] residual functional capacity to do other work," or her "ability to function in the workplace." *Hattig*, 2013 WL 6511866, at *11 (quoting *Nevland*, 204 F.3d at 858).

### 2. *Analysis*

As I summarized in Section V(B)(2), *supra*, the record contains evidence that Mann suffered from recurring, severe migraine headaches. However, the record contains no opinion evidence from any treating or examining source as to Mann's RFC. Thus, in light of *Nevland*, the question is whether there is sufficient other medical evidence to support the ALJ's findings as to Mann's ability to function in the workplace. I find that there is not.

On June 19, 2012, Mann underwent a consultative examination by Divya Narayanaswamy, M.D., at Northeast Iowa Family Practice Center. AR 428-29. The

16

report of that examination is as close as the record gets to containing an opinion from a treating or examining source. Dr. Narayanaswamy found that Mann suffered from "Migraine headaches, uncontrolled," along with other impairments including depression and anxiety. AR 428. She noted that Mann reported suffering from severe migraines about five times per week and that her headaches are "associated with vomiting and photophobia." *Id.* She found that Mann had been either "under treated or not appropriately treated" and recommended that she be referred to a neurologist. AR 429. However, Dr. Narayanaswamy made no findings as to how Mann's headaches affect her RFC or her ability to function in the workplace. AR 428-29.

On February 4, 2013, Mann was examined by a medical student, Lindsay Dickerhoff, under the supervision of William Talman, M.D., a neurologist. AR 546-47. As I noted earlier, Dr. Talman found that Mann suffers from two types of headaches, "a milder daily headache that seems not to interfere with her ADL's and a much more severe headache that is preceded by scintillating scotomata and accompanied by nausea and photophobia." AR 547. Both Ms. Dickerhoff and Dr. Talman made note of the fact that Mann had tried a wide variety of medications, with little success. AR 546-47. Again, however, Dr. Talman provided no opinion as to the impact of Mann's headaches on her RFC or her ability to function in the workplace.

The Commissioner relies on the opinions of three state agency consultants who reviewed Mann's records but did not examine her. Doc. No. 14 at 15. Having carefully reviewed those opinions, and the medical evidence upon which they are based, I find that they do not fill the *Nevland* gap. While there is ample evidence that Mann suffers from recurring, serious migraine headaches, neither the consultative opinions nor the underlying medical records adequately address the impact those headaches have on Mann's ability to function in a work environment. The ALJ should have developed the record further by obtaining an opinion on this issue from a treating or examining source.

As such, on remand the ALJ shall obtain an opinion from a treating or examining source that specifically addresses the impact of Mann's migraine headaches on her ability

17

to function in the workplace. The ALJ shall then revisit the sequential evaluation process in light of that additional evidence.

### D. *The RFC Determination*

Mann's final argument is that the ALJ's findings as to her RFC are flawed because they do not fully address her need for unscheduled absences due to migraine headaches. Because I have already determined that remand is necessary, there is no need to address this issue at length. However, I do agree with Mann that if the ALJ again reaches Step Four (that is, does not find Mann to be disabled at Step Three), the RFC findings should explicitly discuss any limitations relating to migraine headaches. *See, e.g., Stewart v. Colvin*, No. C13-2029, 2014 WL 1165870, at *13 (N.D. Iowa Mar. 21, 2014).

## *VI. CONCLUSION*

For the reasons set forth herein, the Commissioner's determination that Mann was not disabled is **reversed** and this case is **remanded** to the Commissioner for further proceedings. Judgment shall enter in favor of the plaintiff and against the defendant.

On remand, the ALJ shall obtain an opinion from a treating or examining source that specifically addresses the impact of Mann's migraine headaches on her ability to function in the workplace. Based on that additional evidence, that ALJ shall then reassess Mann's claim through the sequential evaluation process. Among other things, this analysis should include (a) consideration of whether Mann's impairment meets or equals Listing 11.03 and, if not, (b) a reevaluation of Mann's RFC and the resulting impact of that RFC on Mann's ability to perform past relevant work and other work that exists in significant numbers in the national economy.

**IT IS SO ORDERED.**

**DATED** this 23rd day of April, 2015.

                                                    _____
                                                  LEONARD T. STRAND
                                                  UNITED STATES MAGISTRATE JUDGE